# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**PLAS-PAK INDUSTRIES, INC.**
**Third Party Requester/Appellant**

**v.**

**SULZER MIXPAC AG**
**Patent Owner/ Appellee**

**Reexamination No: 95/001,656**

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal

Circuit was timely filed on March 13, 2014, in the United States Patent and

Trademark Office in connection with the above identified *inter partes* re-

examination proceeding. Pursuant to 35 U.S.C. § 143, and Fed. Cir. R. 17(b)(1),

a Certified List is this day being forwarded to the Federal Circuit.

Respectfully submitted,

Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

By: _Kyra Cilwaham_

Kyra Abraham
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Date: April 28, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the

foregoing has been served on Appellant and Appellee this 28th day of April, 2014,

as follows:

David Arnold
Cantor Colburn LLP
20 Church Street, 22nd Floor
Hartford, CT 06103-3207

Thomas C. Basso
K&L Gates LLP
P.O. Box 1135
Chicago, IL 60690

By: _____
Kyra Abraham
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Form PTO 55 (12-80)

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

### April 28, 2014

(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the United States Patent and Trademark Office. Said list was compiled from the electronic file of the *Inter Partes* Reexamination proceeding identified below:

**Patent Owner(s): RICHARD PARKS CORROSION TECHNOLOGIES, INC.**

**Reexamination No. 95/001,656**

**Filed: June 13, 2011**

**Title of Invention:** *DUAL COMPONENT DISPENSING AND MIXING SYSTEMS FOR MARINE AND MILITARY PAINTS*

By authority of the

**DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE**

*Certifying Officer*



Prosecution History Ser. No. 95/001, 656

| Date | Document |
| --- | --- |
| 06/13/2011 | REQUEST FOR INTER PARTES REEXAMINATION |
| 07/19/2011 | NOTICE OF INTER PARTES REEXAMINATION REQUEST FILING DATE |
| 07/19/2011 | NOTICE OF ASSIGNMENT OF INTER PARTES REEXAMINATION REQUEST |
| 08/15/2011 | NON-FINAL OFFICE ACTION |
| 08/15/2011 | ORDER GRANTING REQUEST FOR INTER PARTES REEXAMINATION |
| 10/17/2011 | POWER OF ATTORNEY |
| 10/17/2011 | RESPONSE TO NON-FINAL ACTION |
| 11/15/2011 | THIRD PARTY REQUESTER COMMENTS |
| 12/14/2011 | ACTION CLOSING PROSECUTION |
| 01/13/2012 | INFORMATION DISCLOSURE STATEMENT |
| 04/13/2012 | RIGHT OF APPEAL NOTICE |
| 05/11/2012 | NOTICE OF APPEAL - REQUESTER |
| 07/10/2012 | APPELLANT BRIEF - REQUESTER |
| 08/09/2012 | RESPONDENT BRIEF - OWNER |
| 12/12/2012 | EXAMINER'S ANSWER |
| 01/11/2013 | REBUTTAL BRIEF - REQUESTER |
| 02/07/2013 | REQUEST FOR ORAL HEARING - REQUESTER |
| 02/15/2013 | REQUEST FOR ORAL HEARING - OWNER |
| 03/07/2013 | INFORMATION DISCLOSURE STATEMENT |
| 03/25/2013 | NOTICE OF ENTRY OF INFORMATION DISCLOSURE STATEMENT |
| 03/25/2013 | NOTICE OF ENTRY OF REBUTTAL BRIEF |
| 06/11/2013 | PTAB NOTICE OF DOCKETING |
| 08/08/2013 | NOTICE OF HEARING |
| 08/27/2013 | CONFIRMATION OF HEARING - OWNER |
| 08/28/2013 | CONFIRMATION OF HEARING - REQUESTER |
| 10/18/2013 | REQUEST FOR ELECTRONIC EQUIPMENT FOR ORAL HEARING |
| 01/14/2014 | RECORD OF ORAL HEARING |
| 01/17/2014 | PTAB DECISION ON APPEAL |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re *Inter Partes* Reexamination of: | § | |
| U.S. Patent No. 7,815,384 | § | Confirmation No. 1141 |
| | § | |
| Appeal No.: 2013-007786 | § | Group Art Unit: 3993 |
| Control No. 95/001,656 | § | |
| | § | Docket No.: PLP0067USR |
| For: DUAL COMPONENT DISPENSING AND | § | |
| MIXING SYSTEMS FOR MARINE AND | § | Examiner: Aaron J. Lewis |
| MILITARY PAINTS | § | |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

To the Director of the U.S. Patent and Trademark Office:

Pursuant to 35 U.S.C. §§ 141 and 142 and 37 C.F.R. §§ 1.302 and 1.983, Third Party

Requestor Plas-Pak, Industries, Inc. (Plas-Pak) hereby appeals to the to the United States Court

of Appeals for the Federal Circuit for review of the Patent Trial and Appeal Board's Decision on

Appeal mailed January 17, 2014 ("Decision") in the above identified *inter partes* reexamination

case. A courtesy copy of the Decision is attached.

In compliance with Federal Circuit Rule 15(a), three copies of this Notice of Appeal

together with the requisite fee prescribed by Federal Circuit Rule 52 ($450.00) are being

submitted to the Clerk of the United States Court of Appeals for the Federal Circuit. In the event

that any fees are determined to be due to the U.S. Patent and Trademark Office, please charge

such fees to out Deposit Account No. 06-1130.

1

Dated: March 13, 2014

Respectfully submitted,

CANTOR COLBURN, L.L.P.

Applicant's Attorneys

By:_____/David Arnold/_____
        David Arnold
        Registration No. 48,894

| | |
|---|---|
| Address: | 20 Church Street, 22nd Floor |
| | Hartford, CT 06103-3207 |
| Telephone: | (860) 286-2929 |
| Fax: | (860) 286-0115 |

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing NOTICE OF APPEAL TO THE UNITED
STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT was served on March 13,
2014 by first class mail to:

Thomas C. Basso, Esq.
K&L GATES LLP
P.O. BOX 1135
CHICAGO, IL 60690

By:_____/David Arnold/_____
    David Arnold
    Registration No. 48,894
    20 Church Street, 22nd Floor
    Hartford, CT  06103-3207
    Telephone: (860) 286-2929
    Fax: (860) 286-0115

3

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,656 | 06/13/2011 | 7815384 | PLP0067USR | 1141 |

29180          7590          01/17/2014
K&L Gates LLP
P.O. BOX 1135
CHICAGO, IL 60690

RECEIVED

JAN 2 7 2014

CANTOR COLBURN LLP
DOCKETING

| EXAMINER |  |
|---|---|
| LEWIS, AARON J |  |
| ART UNIT | PAPER NUMBER |
| 3993 |  |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/17/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

PLAS-PAK INDUSTRIES, INC.
Requester, Appellant

v.

SULZER MIXPAC AG[1]
Patent Owner, Respondent

Appeal 2013-007786
*Inter partes* Reexamination Control 95/001,656
Patent US 7,815,384 B2[2]
Technology Center 3900

*Before* STEVEN D.A. McCARTHY, JEFFREY B. ROBERTSON and
DANIEL S. SONG, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge*

DECISION ON APPEAL

---

[1] Sulzer Mixpac AG is the real party in interest (Respondent Brief
(hereinafter "Resp. Br.") 1).

[2] Patent US 7,815,384 B2 (hereinafter "'384 patent") issued October 19,
2010 to Parks et al.

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

## STATEMENT OF THE CASE

Claims 1-15 are subject to reexamination and have been confirmed by
the Examiner (Right of Appeal Notice[3] (hereinafter "RAN" 1)). The
Requester appeals under 35 U.S.C. §§ 134 and 315 from the Examiner's
withdrawal of certain previously adopted rejections, and the Examiner's
refusal to adopt certain other proposed rejections of claims 1-15 (Appeal
Brief (hereinafter also "App. Br.") 4, 7-8). We have jurisdiction under 35
U.S.C. §§ 134 and 315.

The Requester relies on its Appeal Brief and Rebuttal Brief
(hereinafter "Reb. Br."). The Patent Owner relies on a Respondent Brief
(hereinafter "Resp. Br.") in support of the Examiner's decision. An oral
hearing with the representatives of the involved parties was held before the
Patent Trial and Appeal Board on October 23, 2013, a transcript of which
will be entered into the electronic record in due course.

The following proceedings have been identified as being related to the
'384 patent (App. Br. 4; Resp. Br. 2):

1.    Reexamination Control 95/001,371 (Appeal 2013-001649[4]) for
U.S. Patent No. 7,144,170, which issued from an application parent to the
continuation application that issued as the '384 patent; and

---

[3] The Examiner's Answer mailed December 12, 2012 merely incorporates by
reference the RAN so we cite to the RAN herein.

[4] The Decision for Appeal 2013-001649 was mailed July 1, 2013. A
Request for Rehearing has been filed by the Requester on July 30, 2013, and
Patent Owner's Comments were received August 29, 2013. The Request for
Rehearing has not yet been decided.

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

2. *Richard Parks Corrosion Tech Inc. v. Plas-Pak Indus Inc., V.O.*
*Baker Co. Inc., Thomas Baker and Jason Baker*, Civil Action No. 2010-cv-
00437 (D. Conn.), which is characterized by the Requester and the Patent
Owner as a contract action.

We AFFIRM.

## THE INVENTION

The '384 patent is directed to a device for applying a coating, and
methods for using the same. Representative independent claim 1 reads as
follows (Claims App'x, italics added):

1. (Original) A device for applying a coating, comprising:
        at least two cylindrical cartridges,
        a static mixing nozzle in fluid communication with the
cartridges,
        *a spray tip,* in fluid communication with the nozzle,
        *a first flexible hose is disposed between and in fluid*
*communication with the nozzle and the spray tip,* and
        a second hose, in fluid communication with the spray tip,
for supplying atomization air to the spray tip.

Independent claims 7 and 10 are directed methods for applying a
coating or a paint, respectively, using a device having the limitations of
claim 1.

3

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

## REJECTIONS PREVIOUSLY ADOPTED, NOW WITHDRAWN

The Requester appeals from the Examiner's withdrawal of the
following previously-adopted obviousness rejections under 35 U.S.C.
§ 103(a):[5]

A)    Claims 1-6 and 15 over Fukuta[6] in view of Morris[7] and
Einbecker.[8]

B)    Claims 7-9 over Fukuta in view of Morris, Brogan[9] and
Einbecker.

C)    Claims 10-12 over Fukuta in view of Morris and Einbecker.

D)    Claims 1-6 and 13-15 over Fukuta in view of Colin[10] and
Einbecker.

E)    Claims 7-9 over Fukuta in view of Colin, Brogan and
Einbecker.

F)    Claims 10-12 over Fukuta in view of Colin and Einbecker.

## PROPOSED REJECTIONS NOT ADOPTED

The Requester further appeals from the Examiner's refusal to adopt
the following proposed obviousness rejections under 35 U.S.C. §103(a):[11]

---

[5] We utilize the same sequential lettering used by the Requester in its Appeal
Brief to identify the withdrawn rejections.

[6] Patent US 4,745,011 issued May 17, 1988 to Fukuta et al.

[7] Patent US 3,989,228 issued November 2, 1976 to Morris et al.

[8] Patent US 2,511,627 issued June 13, 1950 to Einbecker.

[9] US Patent Publication 2002/0110682 A1 to Brogan published August 15,
2002.

[10] Patent US 5,033,650 issued July 23, 1991 to Colin et al.

4

G) Claims 1-6 and 13-15 over Jacobsen[12] in view of Hunter.[13]

H) Claims 7-9 over Jacobsen in view of Hunter and Brogan.

I) Claims 10-12 over Jacobsen in view of Hunter.

## PRINCIPLES OF LAW

"[A] patent composed of several elements is not proved obvious
merely by demonstrating that each of its elements was, independently,
known in the prior art. ... it can be important to identify a reason that would
have prompted a person of ordinary skill . . . to combine the elements in the
way the claimed new invention does." *KSR Int'l Co. v. Teleflex Inc.*, 550
U.S. 398, 418 (2007). "To facilitate review, [an obviousness] analysis
should be made explicit." *Id.* (citing *In re Kahn*, 441 F.3d 977, 988 (Fed.
Cir. 2006) ("[R]ejections on obviousness grounds cannot be sustained by
mere conclusory statements; instead, there must be some articulated
reasoning with some rational underpinning to support the legal conclusion of
obviousness")).

Combinations of references that render a prior art device inoperable,
or that fundamentally change the manner of operation of the device, often
will not support a finding of obviousness. *See In re Ratti*, 270 F.2d 810, 813
(CCPA 1959) ("This suggested combination of references would require a
substantial reconstruction and redesign of the elements shown [in the prior

---

[11] We utilize the same sequential lettering used by the Requester in its
Appeal Brief to identify the proposed rejections not adopted by the
Examiner.

[12] Patent US 6,241,125 B1 issued June 5, 2001 to Jacobsen et al.

[13] US Patent Publication 2002/0170982 A1 to Hunter, published November
21, 2002.

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

art] as well as a change in the basic principles under which [the prior art]
construction was designed to operate.").

In addition, if a proposed modification would render the prior art
invention being modified unsatisfactory for its intended purpose, then there
is unlikely to be a persuasive suggestion or motivation to make the proposed
modification. *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984); *see also*
*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326
(Fed. Cir. 2009) (noting that "the 'predictable result' discussed in KSR refers
not only to the expectation that prior art elements are capable of being
physically combined, but also that the combination would have worked for
its intended purpose," *citing KSR*, 550 U.S. 398); *In re ICON Health &*
*Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007) ("[A] reference teaches
away from a combination when using it in that combination would produce
an inoperative result").

## ISSUES

1.    Whether the Examiner erred in finding that modification of the
apparatus of Fukuta with the mixing and dispensing apparatus of Morris as
suggested by the Requester would have changed the principle of operation of
the apparatus of Fukuta.

2.    Whether the Examiner erred in finding that modification of the
apparatus of Fukuta with the multiple barrel dispensing device of Colin as
suggested by the Requester would have changed the principle of operation of
the apparatus of Fukuta.

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

3.     Whether the Examiner erred in finding that modification of the
dispensing apparatus of Jacobsen with the spray nozzle of Hunter as
suggested by the Requester would have rendered the dispensing apparatus of
Jacobsen inoperable for its intended purpose.

## ANALYSIS

Preliminarily, we note that only those arguments timely made in the
briefs of record in this appeal have been considered. Other arguments not
made or those not properly presented to the Board have not been considered
and are deemed to be waived. *See* 37 C.F.R. § 41.67(c)(1)(vii) ("Any
arguments or authorities not included in the brief permitted under this
section or §§ 41.68 and 41.71 will be refused consideration by the Board,
unless good cause is shown").

### Rejections A)-C) Based on the Combination of Fukuta and Morris

In refusing to maintain Rejections A)-C), the Examiner finds that a
person of ordinary skill in the art would not combine the spray gun of
Fukuta with the mixing and dispensing apparatus shown in Figure 4 of
Morris as asserted by the Requester. The Examiner finds that such
combination would not be made in the absence of hindsight because Fukuta
provides pumps, check valves, and stop valves to provide the components of
the coating while Morris requires manual manipulation of a trigger to move
a drive means (RAN 8, 11, 14, 31). The Examiner concludes that "it would
not have been obvious to modify Fukuta et al. by simple substitution of the
dual cartridges of Morris et al. because doing so would have resulted in a

7

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

change of the principle of operation of Fukuta et al. thereby rendering it
inoperable for its intended purpose." (RAN 8-9; *see also* RAN 11-12, 14-15;
Resp. Br. 10, 12). The Examiner states that "[t]he simple substitution of the
dual cartridges [of Morris] for the dual containers of Fukuta et al. (as put
forth by the Third Party Requester) would have resulted in a device having
incompatible parts" and neither references "provides a teaching of how to
remove the material from the dual cartridges of Morris et al. using the
pumping arrangement of Fukuta et al." (RAN 8, 11, 14; *see also* Resp. Br.
13).

The Requester argues that "[i]t would have been obvious to couple
Morris' cylindrical cartridges to Fukuta's first flexible hose since the device
of Fukuta dispenses a two component reactive coating material through a
static mixer as taught by Morris." (Request for *Inter Partes* Reexamination,
pg. 19). The Requester notes that Einbecker was previously relied upon by
the Examiner for disclosing a flexible hose (App. Br. 10, fn. 2). The
Requester also argues that the suggested modification to Fukuta does not
change the basic principle under which Fukuta is designed to operate, or
require substantial reconstruction thereof (App. Br. 13-14). According to the
Requester,

> the basic principle under which Fukuta operates is a movement
> of two separate reactive components brought together at a
> mixer and dispensed through a dispenser. The basic principle
> under which Morris operates is the same in that Morris operates
> by a movement of two separate reactive components brought
> together at a mixer and dispensed through a dispenser.
> Providing a mechanism to move the mixtures through the
> system is subservient to this basic operating principle common

8

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

> to both Fukuta and Morris, and this principle of operation is not
> changed or eliminated by combining both references.

(App. Br. 13-14).

The Requester further asserts that "whether it is a ram/piston
arrangement or pumping arrangement, does not impact the functional design
of Fukuta to move two separate reactive components through a mixer and
dispensed through a dispenser." (App. Br. 14). According to the Requester,
"Morris teaches that a two-component device that utilizes a pumping
arrangement, similar to Fukuta's pumping arrangement, can be adaptable to
the previously described dual cartridge/ piston system shown in [Figure] 4."
(App. Br. 15).

The Requester appears to rely on alternative bases for modifying the
apparatus of Fukuta. The Requester's proposal appears to modify the
apparatus of Fukuta by replacing the components upstream of its mixer 3
with the cartridges 70 and mixing gun 60 of Morris (shown in Fig. 4), or
alternatively, replacing only the supplies of the hardener and main
component and their corresponding pumps P in the apparatus of Fukuta with
the cartridges 70 and the manually actuated mixing gun 60 of Morris. We
are not persuaded by the Requester's arguments.

The Requester's formulation of the broad and general function of the
two-component mixing apparatus (i.e., "movement of two separate reactive
components brought together at a mixer and dispensed through a dispenser"
(App. Br. 13)) is unpersuasive to demonstrate obviousness. In *In re Ratti*,
the appellant's seal and the prior art seal performed the general function of
sealing but the Federal Circuit found the suggested modification to the prior
art seal inadequate to establish obviousness. *Ratti*, 270 F.2d at 811-13. In

9

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

particular, the court found that while the claimed invention and the prior art
both functioned to seal, the suggested modification required substantial
reconstruction and changed the basic principle of operation from attaining
sealing through a rigid, press-fit, interface between the components, to
attaining sealing by providing a resilient interface between the components.
*Id.*

In contrast, the court reached a different result in *In re Mouttet*
wherein the issue raised was whether changing the optical paths of a prior art
computing device to electronic wires changed the principle of operation of
the computing device. *Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012). In
concluding that "the Board's determination that the difference in the
circuitry-electrical versus optical-does not affect the overall principle of
operation of a programmable arithmetic processor was supported by
substantial evidence," the court found "this difference does not affect the
operability of Mouttet's broadly claimed device" and that "the examiner saw
nothing in the programming and processing of junction states in [the prior
art] that is unique to its optical implementation, and [the appellant] has not
shown otherwise." *Id.*

The facts of the present appeal are more closely aligned to those of
*Ratti* than to the facts of *Mouttet*. In a manner similar to that of *Ratti*, while
the apparatus of Fukuta is directed to an apparatus for mixing a two
component mixture, Fukuta makes clear that its contribution to the art is in
providing such an apparatus which prevents backflow even when the
propensity for backflow occurs repeatedly and at high velocity (Fukuta, col.
1, ll. 35-51; col. 1, l. 67-col. 2, l. 14). Changing the apparatus of Fukuta in

10

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

the manner proposed by the Requester requires substantial reconstruction
and affects the principle of operation of the disclosed apparatus of Fukuta.

The Requester argues that "modifying the pumping system in Fukuta
with the dual cartridges ram/piston system of Morris does not rise to a
substantial reconstruction of Fukuta's system" (App. Br. 14) and asserts that
it not a requirement under *KSR* to require disclosure of how a modified
device would work and that both references dispense a two component
reactive coating material through a static mixer, and thus, can be combined
(App. Br. 16). However, we fail to see how the removal of the various
components associated with the operation the Fukuta apparatus, which allow
for the very object of the apparatus, and substitution of a very differently
constructed mechanism of Figure 4 in Morris, can reasonably be considered
not a "substantial reconstruction" or redesign of the Fukuta apparatus.

As acknowledged by the Requester, the difference between the
systems of Fukuta and Morris is the "manner in which backflow of the
mixtures is prevented." (Reb. Br. 4). While the Requester further asserts that
Morris teaches that a piston is equally effective as a pump, Fukuta is
directed to this very "manner in which the backflow of the mixture is
prevented" (i.e., by using check valves, stop valves and escape valve).
Hence, the modification suggested by the Requester, where these
components of Fukuta are replaced with the cartridges 70 and mixing gun 60
of Morris, would impact this functionality in a fundamental way so as to
change the manner in which the apparatus of Fukuta functions. There is no
indication, nor does the Requester persuade us, that the device shown in
Figure 4 of Morris (or for that matter, the configuration shown in Figure 2)

11

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

which is devoid of check valves and stop valves performs the function to
which the apparatus of Fukuta is directed, that is, to prevent backflow even
when the propensity for backflow occurs repeatedly and at high velocity.

The facts of the present appeal are also distinguishable from those of
*Mouttet.* The manner in which the two-component mixing apparatus of
Fukuta prevents backflow is unique in its implementation. As noted above,
Fukuta makes clear that its contribution to the art is not in merely providing
an apparatus for bringing together a two component mixture, but rather, it is
in providing such an apparatus for preventing backflow even when the
propensity for backflow occurs repeatedly and at high velocity (Fukuta, col.
1, ll. 35-51; col. 1, l. 67-col. 2, l. 14). It is the disclosed arrangement and
implementation of the stop valves 5a, 5b and the escape valve 6 in Fukuta
which allows the disclosed mixing apparatus to prevent such backflow to the
check valves 4a, 4b which can "adversely influence[] the opening and
closing operation of the check valve[s]." (Fukuta, col. 1, l. 67-col. 2, l. 14;
col. 3, ll. 7-37; Fig. 1).

Furthermore, while the ability for bodily incorporation need not be
demonstrated, mere assertions of obviousness are not adequate, but instead,
such assertions must be supported by some articulated reasoning with
rational underpinnings. *See KSR*, 550 U.S. at 418. There is inadequate basis
to conclude that the suggested combination would likely be successful in
delivering the component materials so as to be suitable for spraying a
coating as disclosed in Fukuta and to attain the objective of preventing

12

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

backflow under the specific noted operating conditions.[14] In particular, it is
not evident in the Requester's proposed rejections and the references relied

---

[14] The Requester asserted during the Oral Hearing that the use of cartridges
and ram/piston system such as that of Morris in a spray coating application
is known in the art. However, the Requester has not proposed rejections of
the claims of the '384 patent on such evidence. The rejections on appeal that
are actually before the Board are devoid of such evidence and we find it
improper to rely on such prior art that is not part of the rejections proposed
which are at issue and on appeal.

During the Oral Hearing, the Requester's legal representative stated as
follows:

> MR. ARNOLD: David Arnold once again, Your Honors.
> Thank you very much.
>
> I'd first like to respond to Judge Song's question regarding the
> availability in the prior art of piston systems with a spray gun.
> They are most definitely in the prior art. They were known to
> Applicant at the time of filing the three-four patents, and they
> are in the IDS that was filed with the patent application in 2006.
> And I refer to Hunter, Patent No. 6764026. It discloses
> cartridge systems, side-by-side cartridge systems, with pistons,
> with a polypropylene flexible mixer that has a flexible tip
> connected to a spray tip with air line connected to the spray tip.
> That's Hunter 026.
>
> JUDGE SONG: And yet you didn't cite that in your proposed
> rejection?
>
> MR. ARNOLD: It was overlooked, Your Honor. It was in the
> IDS. It was considered that it had been fully considered by the
> Examiner. But it may or may not have been. But as the
> Federal Circuit in *In re Swanson* says, mistakes occur, Your
> Honor, and that's why the reexam process is an important
> quality check on patents that are defective and were erroneously
> granted and may be withdrawn.

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

upon therein that the cartridges and mixing gun such as that disclosed in
Morris can be used in the context of the spray apparatus of Fukuta. It was
these references and the Requester's proposed rejections upon which
substantial new questions of patentability were found under 35 U.S.C.
§§ 312(a)[15] and 313, and this *inter partes* reexamination was instituted,
Requester's proposed rejections being the basis of the rejections now on
appeal at the Board under 35 U.S.C. § 315(b).

Even if the Requester's suggested modification is to replace just the
supplies of the hardener and main component and their corresponding
pumps P of Fukuta with the cartridges 70 and mixing gun 60 of Morris, the
Requester's argument is not persuasive. The Requester refers to the
inclusion of two different embodiments shown in Figures 2 and 4 of Morris
to assert that "Morris teaches that ram/piston systems and [] pumping

---

JUDGE SONG: And yet as the Board, we review for examiner
error, and the Examiner has reviewed what you had proposed as
the rejections.

MR. ARNOLD: I understand, Your Honor. ...
(Oral Hearing Transcript, pgs. 27-28).

[15] As to *inter partes* reexamination, "the scope of reexamination may
encompass those issues that raise a substantial new question of patentability,
whether proposed by the requester or the Director, but, unless it is raised by
the Director on his own initiative, it only includes issues of patentability
raised in the request under § 311 that the Director has determined raise such
an issue. It otherwise may not include other prior art than what constituted
the basis of the Director's determination of a substantial question of
patentability." *Belkin Intern., Inc v. Kappos*, 696 F.3d 1379, 1383 (Fed. Cir.
2012).

14

systems are interchangeable in two-component dispensing system." (App. Br. 14; *see also* Reb. Br. 4). However, the Requester fails to appreciate that even if Figures 2 and 4 of Morris are considered to provide equivalent functions with each other, the resultant teaching of Morris is to replace the entire fluid system upstream of the static mixer, such replacement having been discussed above. In addition, both of these embodiments of Morris do not disclose the functions of check valves 4a, 4b, the stop valves 5a, 5b or the escape valve 6 disclosed in Fukuta which are described as functioning together to attain the objective of preventing backflow under specific conditions described in Fukuta. There is no indication, nor does the Requester persuade us, that the modification of Fukuta by using the cartridges and the manually actuated mixing gun of Morris would allow the various valves in Fukuta to function in their intended manner as with a pump so that the modified device would function in the same way and attain the objective to which the spray apparatus of Fukuta is directed.

The Requester asserts that the piston/ram/ratchet mechanism in Morris functions as a check valve disposed upstream of the mixer to prevent backflow from the mixer, and that the claims of the '384 patent do not require particular placement of a stop valve so that patentability cannot be based on particular placement thereof (Reb. Br. 5). However, we are not provided with persuasive evidence in support of this assertion of same functionality. *See In re Schulze*, 346 F.2d 600, 602 (CCPA 1965) ("Argument in the brief does not take the place of evidence in the record."); *see also Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005). In addition, even if there is functional equivalence in the

15

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

mechanism of Morris to the check valve of Fukuta on their own, the
Requester does not adequately address the stop valves 5a, 5b or the escape
valve 6 of Fukuta that function together as discussed above and whether the
objectives of Fukuta can be attained using the manually actuated mixing gun
in a spray device. To any extent that the assertion of the Requester may be
that these valves of Fukuta would not be necessary if the piston/ram/ratchet
mechanism of Morris is used, we again fail to see how such modification to
the apparatus of Fukuta would not be a substantial reconstruction/redesign
which changes its principle of operation as discussed *supra*.

Therefore, in view of the above, we affirm the Examiner's refusal to
maintain Rejection A) principally based on the combination of Fukuta in
view of Morris as appealed by the Requester. The Requester relies on the
same arguments with respect to Rejections B) and C) (App. Br. 17).
Correspondingly, we affirm the Examiner's refusal to maintain these
rejections as well.

### Rejections D)-F) Based on the Combination of Fukuta and Colin

In refusing to maintain Rejections D)-F), the Examiner finds that a
person of ordinary skill in the art would not combine the spray gun of
Fukuta with the mixing and multiple barrel dispensing device of Colin
because the "substitution of the dual compartments of Colin et al. for the
dual containers of Fukuta et al. (as put forth by the Third Party Requester)
would have resulted in a device having incompatible parts" and neither
reference "provides a teaching of how to remove the material from the dual
compartments of Colin et al. using the pumping arrangement of Fukuta et

16

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

al." (RAN 18-19, 21-22, 24; *see also* Resp. Br. 18-19). The Examiner
concludes that "it would not have been obvious to modify Fukuta et al. by
simple substitution of the dual compartments of Colin et al. because doing so
would have resulted in a change of the principle of operation of Fukuta et al.
thereby rendering it inoperable for its intended purpose." (RAN 19; *see also*
RAN 22).

The issues presented with respect to the withdrawn Rejection D) are
substantively similar to that of Rejection A) except that this rejection relies
on Colin instead of Morris. Indeed, the Requester relies on arguments
similar to that of Rejection A) asserting that the basic principle under which
Colin operates is the same as Fukuta in that it operates by movement of two
reactive components brought together at a mixer and dispensed through a
dispenser (App. Br. 19-20).

Thus, for substantially the same reasons already discussed with
respect to Rejection A), we are not persuaded that the Examiner erred in
refusing to maintain Rejection D) as appealed by the Requester and affirm
the Examiner's decision. The Requester relies on the same arguments with
respect to Rejections E) and F) (App. Br. 20). Correspondingly, we also
affirm the Examiner's refusal to maintain Rejections E) and F).

### Rejections G)-I) Based on the Combination of Jacobsen and Hunter

In refusing to adopt proposed Rejections G)-I), the Examiner finds
that Jacobsen discloses a device with dispensing nozzles for the stated
objective of dispensing fluid materials directly into a surface crack such as
in floors, walls or ceilings so as to minimize leakage, but does not disclose

17

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

dispensing of fluid by spraying or that a spray nozzle would attain this
objective (RAN 25-26; *see also* Resp. Br. 22-23). The Examiner also finds
that Hunter does not disclose using its spray nozzle "to dispense fluid
material into cracks in a manner that would minimize leakage." (RAN 26).
The Examiner concludes that "it would not have been obvious to modify
Jacobsen et al. by substituting the atomizing spray nozzle of Hunter because
it would have rendered the device of Jacobsen et al. unsuitable for its
intended purpose." (RAN 25-30; *see also* Resp. Br. 22-23). We find no
error in the Examiner's assessment and address the Requester's arguments
*infra.*

　　　The Requester argues that "combining Jacobsen's dispensing system
with Hunter's spray nozzle for a two component system is nothing more than
predictable variation of prior art elements according to their established
function of a dispensing a multi-component reactive material." (App. Br.
25). However, we observe that the Requester has not demonstrated that an
established function of a cartridge and plunger is to dispense a multi-
component reactive material for spraying using a spray nozzle.[16] The
Requester does not adequately explain how the modified device would work,
and the manner in which the cartridges and mixing gun disclosed in
Jacobson can be used in the context of the spray apparatus of Hunter to
attain the specific function of dispensing fluid materials directly into
surfaces cracks to minimize leakage. It is not evident based on the
Requester's proposed rejections and arguments how filling of cracks and
voids which is the purpose of the dispensing apparatus described in Jacobson

---

[16] *See also* Footnote 14 *supra.*

18

can be attained with spray nozzles. Indeed, modifying Jacobsen to provide a
spray nozzle would appear to render Jacobsen unsuitable for its intended
purpose of dispensing the two component materials into cracks in walls, etc.
*See In re Gordon*, 733 F.2d at 902; *DePuy Spine*, 567 F.3d at 1326; *In re
ICON Health*, 496 F.3d at 1382. The Requester does not submit persuasive
argument or evidence which establishes that a spray nozzle can be used for
filling cracks or voids, particularly while minimizing leakage of the fill
material.

The Requester argues that Jacobsen's disclosure is broader than the
Examiner's view and asserts that it describes other purposes and features
"such as a general kit system having alternate manners of connections."
(App. Br. 21-22, *citing* Jacobsen, col. 2, ll. 46-56). The Requester argues
that because the specification of Jacobsen states that only specific
embodiments of the invention have been illustrated and that the invention is
to be limited only by the scope of the claims which do not include
limitations directed to filling cracks while ensuring minimum leakage,
Jacobsen should be understood to disclose a broader intended purpose (Reb.
Br. 8).

Similar arguments were also presented in Appeal 2013-001649 and
found unpersuasive. *See Plas-Pak Indus., Inc. v. Richards Parks Corrosion
Tech., Inc.*, 2013 WL 3804717 at *6-*7 (PTAB 2013). In particular, the
Decision for Appeal 2013-001649 states:

> We believe that a person of ordinary skill in the art would
> not view the Jacobsen disclosure in the dissected manner that
> the Requester urges. In attempting to create the impression that
> Jacobsen discloses a separate embodiment that has broader
> usage, the Requester relies on what Jacobsen discloses, not as a

19

> separate embodiment, but as one of two basic objects of the
> invention. App. Br. 18-19, quoting Jacobsen, col. 2, ll. 46-56
> ("[a] basic object of this invention is to provide ... multiple
> piece kits ... ").
>
> Jacobsen discloses two "basic objects" of "this
> invention." Jacobsen, col. 2, l. 46-col. 3, l. 4. Those basic
> objects, in short, are to provide multiple-piece kits suitable for
> connection in alternate manners, to convey separately different
> components prior to mixing and dispensing, and to provide a
> modified dispensing tool and accessory kit for dispensing fluid
> material into cracks and voids. *Id.* Importantly, both of these
> objects are directed to what Jacobsen refers to as "this
> invention." Immediately preceding the recitation of the basic
> objects, Jacobsen describes "this invention" as:
>
>> relat[ing] to devices for establishing leak-proof
>> seated connections with great universality of use
>> with many different types and sizes of dispensing
>> tubes, nozzles, surface ports used in dispensing
>> fluid material from cartridges, *for directing such*
>> *fluid material into cracks in underlying structures.*
>
> Jacobsen, col. 2, ll. 40-45 (emphasis added).
>
> Elsewhere, Jacobsen similarly identifies "this invention"
> as:
>
>> relat[ing] to devices usable for *dispensing fluid*
>> *material(s)* via conventional dispensing outlet
>> nozzle(s) *directly into a surface crack of a*
>> *structure*, such as concrete floors, walls or ceilings.
>
> Jacobsen, col. 1, ll. 13-16 (emphasis added).
>
> In contrast to these detailed statements as to the function
> or intended purpose of the Jacobsen device, as mentioned
> previously, the Requester maintains that the broader function or
> intended purpose of the device is to dispense fluid "where and
> when needed." Such a function or purpose would seemingly,
> however, be the intent or desire of any and all fluid dispensing
> systems of whatever design, and is not particularly instructive

20

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

> to the person of ordinary skill in the art in developing an
> understanding of the Jacobsen invention.
>
> The Requester has not pointed to any portion of
> Jacobsen, and we see none, disclosing a location (where) and
> time (when) in which the device is provided to do anything
> other than dispense fluid to fill cracks in structures. Indeed, in
> the portion of the Jacobsen disclosure that discusses the hose H-
> 4, to which no dispensing device is connected in the Figure 10
> illustration relied on by the Requester, Jacobsen describes that
> the mixing hose provides a comparatively short mixed
> conveyance path before the mixed components are discharged,
> and goes on to discuss that a pinch clamp 301-1 disposed on the
> hose "is effective *for accurate and intermittent control of the*
> *material discharge in close proximity of the crack or void to be*
> *filled* . .. ". Jacobsen, col. 7, l. 65-col. 8, l. 3 (emphasis added).
> This further illustrates how the Requester has taken the
> Jacobsen expression "where and when needed" out of context
> and has attempted to imbue it with far greater significance than
> it has when read in context.
>
> Accordingly, we are not persuaded that the Examiner
> erred in taking the position that the intended purpose of the
> Jacobsen device is to dispense fluid material into cracks in a
> manner that minimizes leakage in the course of dispensing.

2013 WL 3804717 at *6-*7.

Finally, while Requester argues that the claims of Jacobsen are not
limited to filling of cracks, this does not detract from the fact that Jacobsen
does not disclose using its disclosed system with spray nozzles. As
discussed above relative to Rejections A)-C), the Requester has not
adequately demonstrated through persuasive argument or evidence properly
presented before the Board in the present appeal that the system of Jacobsen
is suitable for use with a spray nozzle such as that of Hunter.

21

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

Thus, for the reasons discussed above and set forth in the Board's
Decision in Appeal 2013-001649, we are not persuaded that the Examiner
erred in refusing to adopt Rejection G) as proposed by the Requester and
affirm the Examiner's decision. The Requester relies on the same arguments
with respect to non-adopted Rejections H) and I) (App. Br. 25-26).
Correspondingly, we also affirm the Examiner's refusal to adopt Rejections
H) and I) as proposed by the Requester.

## CONCLUSIONS

1.    The Examiner did not err in finding that modification of the
apparatus of Fukuta with the mixing and dispensing apparatus of Morris as
suggested by the Requester would have changed the principle of operation of
the apparatus of Fukuta.

2.    The Examiner did not err in finding that modification of the
apparatus of Fukuta with the multiple barrel dispensing device of Colin as
suggested by the Requester would have changed the principle of operation of
the apparatus of Fukuta.

3.    The Examiner did not err in finding that modification of the
dispensing apparatus of Jacobsen with the spray nozzle of Hunter as
suggested by the Requester would have rendered the dispensing apparatus of
Jacobsen inoperable for its intended purpose.

## ORDERS

1.    The Examiner's refusal to maintain the withdrawn Rejections
A)-F) is affirmed.

22

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

2.    The Examiner's refusal to adopt proposed Rejections G)-I) is
affirmed.

Requests for extensions of time in this *inter partes* reexamination
proceeding are governed by 37 C.F.R. §§ 1.956.

## AFFIRMED

23

Appeal 2013-007786
Reexamination Control 95/001,656
Patent US 7,815,384 B2

Patent Owner:

K&LGATES LLP
P.O. BOX 1135
CHICAGO, IL 60690

Third Party Requester:

CANTOR COLBURN LLP
20 CHURCH STREET, 22ND FLOOR
HARTFORD, CT 06103

24

ORIGINAL

**RECEIPT FOR PAYMENT**

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received
From _Cantor Colburn_
                 (NAME)

_2013 - 1786_         (ADDRESS)
_PTO - 95/001,686 Patent No. 7,815,354_   _3/24/14_
                    (DATE)

| NON-APPROPRIATED ACCOUNT | AMOUNT | |
|---|---|---|
| Admission Fee | | |
| _filing fee_ | 500 | 00 |
| | | |
| Duplicate Cert. of Admission | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Clerk ☐ | TOTAL | 500 | 00 |
| Deputy Clerk ☐ | | |

Cash ☐    Check ☑    MONEY ORDER ☐

27712